### 4974.  WILCOX, IVES & COMPANY *v.* ROGERS.

1. Where property is delivered to a creditor by his debtor, with instructions to sell it and send the debtor a sum of money, and to apply the balance of the proceeds as a credit on the debt, and the creditor agrees to sell the property and apply the proceeds on the debt, but declines to pay the debtor the sum specified by him, and thereupon the debtor instructs the creditor that unless his instructions are complied with, the acceptance and disposition of the property by the creditor must be treated as a settlement of the debt, and, after such notice, the creditor disposes of the property without paying to the debtor the amount of money which he demanded, there is a complete accord and satisfaction of the debt.

2. Applying the foregoing principle to the facts of the present case, the evidence fully authorized the verdict, and no error of law was committed.
DECIDED SEPTEMBER 9, 1913.

Complaint; from city court of Reidsville—Judge Collins. February 14, 1913.

*H. C. Beasley,* for plaintiffs.

POTTLE, J. The defendant was indebted to the plaintiffs on a promissory note given for the purchase-price of fertilizers. The note became due in the fall, and the plaintiffs sent their collecting agent to see the defendant and obtain payment. The defendant did not have the money to pay, but did have on hand 16 bales of cotton. He informed the agent that he was willing to ship these 16 bales to the plaintiffs, in order that they might sell them and apply the proceeds on the note, provided they would honor his draft for $100, which he needed to pay his cotton-pickers. The agent agreed for the cotton to be shipped, but stated that he did not know whether his principal would honor the draft or not. Thereupon the defendant shipped the cotton to the plaintiffs, and at the same time he wrote a letter stating that the cotton had been shipped and requesting that it be sold on arrival, that his draft for $100 be paid, and that the balance be credited on his note. The plaintiffs replied, stating that they would handle the cotton to the best advantage and place the proceeds as a credit on the note. They de-

.clined, however, to pay the draft, and requested that the defendant withdraw it. Thereupon the defendant wrote to the plaintiffs as follows: "Yours of 5th inst. received. Somewhat surprised. The 16 bales of cotton is my cotton yet. The contract must go where I say go. Now if you want to give me my note for some [same?] handle the same that way. If not you had better place contents as I tell you. We are sending draft back to you for collection. Pay same and send my note at once." To this letter the plaintiffs replied, declining to honor the draft, but stating their willingness to turn over the cotton to any factor the defendant might select, provided they were paid the amount of their indebtedness. They further stated that they were willing to sell the cotton to the best advantage and place the proceeds to his credit, and, if anything was left, they would either honor his draft or forward check in settlement. The letter concluded with the statement that if what had been said was not satisfactory, they would be glad to receive remittance in full, upon receipt of which they would turn over the bill of lading for the cotton to anybody the defendant might designate. The defendant made no reply to this letter. The plaintiffs sold the cotton, credited the proceeds on the note, and brought suit for the balance. The defendant pleaded an accord and satisfaction. The jury found in his favor; and the plaintiffs' motion for a new trial was overruled.

The evidence authorized the verdict. The plaintiffs' agent had no authority to accept from the defendant anything else than the full amount of the note in cash. The defendant was not bound to ship to the plaintiffs his cotton, nor were they bound to accept it. When he shipped it, however, they were bound either to refuse to take it at all, or to accept it upon his terms. The effect of the last letter written by the defendant was that he was willing for the plaintiff to sell the cotton and apply the proceeds to the note, provided they would honor his draft for $100. If they accepted the cotton for the purpose of selling it and applying the proceeds to the note, they were bound to do so upon the terms stated in the defendant's letter; that is, upon the condition that they honor his draft for $100. This they declined to do, but wrote to the defendant a letter proposing to sell the cotton upon the best terms possible and apply the proceeds to his note. The defendant, however, declined to agree to this, but on the contrary, peremptorily

notified the plaintiffs that they must take the cotton upon the terms and conditions stated in his previous letter, or let it alone. He further stated, in effect, that if they did sell the cotton without paying his draft, they must do so upon the understanding that it paid his note in full. Upon receipt of this letter the plaintiffs were bound to do one of two things,—either to refuse acceptance of the cotton at all, or to accept it upon the defendant's terms, which were, either to honor his draft for $100, or to accept the cotton in full satisfaction of the note. The fact that the plaintiffs wrote to the defendant a letter declining to accept his terms does not prevent the transaction from amounting to an accord and satisfaction, when they did actually accept the cotton and dispose of it and refuse to pay his draft. The cotton belonged to the defendant. He had the right to dictate the conditions upon which it should be received, and the plaintiffs were bound to comply with his terms upon their acceptance of the cotton. The charge complained of correctly embodied the principle above stated. The instruction upon the subject of reconciling conflicts in the testimony was not altogether accurate, but is not sufficient cause for a new trial. The evidence authorized the verdict, and no material error of law was committed. *Judgment affirmed.*